# EXHIBIT 2



June 8, 2022

**SENT VIA U.S. CERTIFIED MAIL: [7019 1120 0002 3073 5885]**

Walmart Claims Services
Attention: Veronica Ramirez
800-527-0566 ext. 58048
P.O. Box 14731
Lexington, KY 40512

RE:  Our Client(s)         : Armando Sanchez
     Your Insured          : Walmart
     Date of Loss          : 04/14/2020
     Your Claim Number     : 9142818

Dear Ms. Ramirez:

This letter shall serve as representation of the damages sustained by our client, and a demand for equitable settlement therefrom, in connection with, and arising from, the matter referenced above.

**FACTS REGARDING LIABILITY**

Under Civil Code Section 1714(a), "Everyone is responsible not only for the result of his willful acts, but also for an injury occasioned to another by want of ordinary care of skill in the management of his property or person, except so far as the latter has, willfully or by want of ordinary care, brought injury upon himself."

On April 14, 2020, our client Armando Sanchez (hereinafter "Mr. Sanchez"), was involved in a slip and fall accident at your insured's Walmart, located on Pacheco Blvd. in Los Banos, California (hereinafter "Your Insured"). Mr. Sanchez was walking through Your Insured's facility, and slipped on a liquid substance on the floor, which had been left unattended. Your Insured negligently and recklessly owned, operated, maintained, supervised, inspected, cleaned and managed said premises so as to cause our client's substantial injuries. More specifically, Your Insured failed to provide safe flooring in its facility by leaving a slippery liquid substance on the floor and failing to place the appropriate warning signs a sufficient time prior to the incident and

notifying its customers of the dangerous condition now present in that section of the facility, which Your Insured knew, or in the reasonable exercise of ordinary care should have known existed. Our client was unaware of the grapes on the floor because there had been no barrier or warning to caution customers. Accordingly, Your Insured's failure and/or refusal to have warned or cautioned our client or to have corrected and remedied such condition proximately caused those injuries and damages to our client hereinafter described. The facility was not busy at the time of the fall, and the incident was subsequently reported to the facility, who made an incident report. For a detailed description of said damages, please review the attached medical reports.

## **LIABILITY**

In *Alcaraz v. Vece* (1997) 14 Cal.4th 1149, the tenant therein sued his landlords for personal injuries he sustained after stepping into a defective water meter box, which was located on city owned property near the sidewalk of the landlord's property. The California Supreme Court held that even though the landlord did not own the land on which the meter box was located, the landlord was nevertheless liable because the landlord exercised control over the property surrounding the meter box and thus had a duty to protect the tenant from, or warn him of, the hazardous condition of the meter box.

The *Alcaraz* Court went on to say that <u>a possessor of land has a duty to maintain land in their possession and control in a reasonably safe condition even where the dangerous condition on the land is caused by an instrumentality that the landowner does not own or control. The court also went on to say that one who invites another to do business with him owes to the invitee the duty to exercise reasonable care to prevent his being injured on 'the premises.'</u> The physical area encompassed by the term 'the premises' does not, however, coincide with the area to which the invitor possesses a title or a lease. The 'premises' may be less or greater than the invitor's property. The premises may include such means of ingress and egress as a customer may reasonably be expected to use. *Id.* at 1156, 1245.

This duty by a landlord was extended even further in *Swann v. Oliver* (1994) 22 Cal.App.4th 1324, where the California Court of Appeal stated that in several instances, businesses have been held liable for injuries that occurred on adjacent property when the business has "received a special commercial benefit from the area of the injury plus had direct or de facto control of that area." *Id.* at. 1165.

In addition to the holdings of *Alkaraz* and *Swann,* the facts here are similar to those presented in *Johnston v. De La Guerra Properties, Inc.* (1946) 28 Cal.2d 394. In *Johnston,* the defendant, the owner of a commercial building, leased its premises to a restaurant. The plaintiff, a prospective patron of the restaurant, sued the owner of the building and the tenant who rented the building for personal injuries she suffered after falling on the walkway leading to the entrance of the restaurant. The *Johnston* Court held that <u>"one who leases a part of the premises, retaining control of other</u> portions such as common walks or passages which the tenant is entitled to use, is subject to <u>liability to persons lawfully on the land with the consent of the tenant for damages caused by a dangerous condition existing on the part under the owner's control, if by reasonable care he</u>

could have discovered the condition and made it safe. Accordingly, invitees of the tenant are regarded as being invitees of the owner while on passageways which invitees of the tenant have a right to use and which are under the owner's control." *Id.* at 399.

California courts have ruled that owners of premises open to public are under an even greater duty to others by virtue of that possession or ownership to act reasonably to keep the premises safe and prevent persons from being injured. "The fact that the attention of persons who visit public places of business is attracted by the display of the wares offered for sale and are more or less absorbed by the transactions which they have in mind, would seem to increase the necessity of exercising care to floor spaces, and aisles allotted to the use of the customers should be made safe and kept fit for that purpose." Louie v. Hagstrom's Food Stores, (1947) 81 Cal.App.2d 601, 608. In fact, a customer could not be expected to look at the goods on the counters and at the same time keep his eyes on the floor when it is the intention of the store that its customers view the goods displayed without having to observe the ground. Louie, 81 Cal.App.2d at 610.

In Hatfield v. Levy Brothers (1941) 18 Cal.2d 798, 806, the Supreme Court defined the standard of care for property owners:

"Where the dangerous or defective condition of the property which causes the injury has been created by reason of the negligence of the owner of the property or his employee acting within the scope of the employment, the owner of the property cannot be permitted to assert that he had no notice or knowledge of the defective or dangerous condition in an action by an invitee for injuries suffered by reason of the dangerous condition. Under such circumstances, knowledge thereof is imputed to him." Saunders v. A.M. Williams & Co., 155 Or. 1, 62 P.2d 260." *See also* Henderson v. Progressive Optical System (1943) 57 Cal.App.2d 180, 183-184, wherein it was held that under similar circumstances, such notice is imputed. *See also* Gilbert v. Pessin Grocery Co. (2d Dist. 1955) 132 Cal.App.2d 212, which holds that such knowledge is conclusively presumed from the time of its creation.

Judicial Council of California Civil Jury Instructions, CACI 1001 Basic Duty of Care, states:

"A person who [owns/leases/occupies/controls] property is negligent if he or he fails to use reasonable care to keep the property in a reasonably safe condition. A person who [owns / leases / occupies / controls] property must use reasonable care to discover any unsafe conditions and to repair, replace, or give adequate warning of anything that could be reasonably expected to harm others.

In deciding whether the Walmart used reasonable care, you may consider, among other factors, the following:

(a) The location of the property;
(b) The likelihood that someone would come on to the property in the same manner as Armando Sanchez did;

(c) The likelihood of harm;
(d) The probable seriousness of such harm;
(e) Whether Walmart knew or should have known of the condition that created the risk of harm;
(f) The difficulty of protecting against the risk of such harm; [and]
(g) The extent of Walmart's control over the condition that created the risk of harm; [and]
(h) [Other relevant factor(s)]"

As to the legal responsibilities of property owners to provide notice of dangerous conditions, <u>Judicial Council of California Civil Jury Instructions</u> CACI 1011 Constructive Notice Regarding Dangerous Conditions on Property, states:

"In determining whether Walmart should have known of the condition that created the risk of harm, you must decide whether, under all the circumstances, the condition was of such a nature and existed long enough that Walmart had sufficient time to discover it and, using reasonable care:

1. Repair the condition; or
2. Protect against harm from the condition; or
3. Adequately warn of the condition.

Walmart must make reasonable inspections of the property to discover unsafe conditions. If an inspection was not made within a reasonable time before the accident, this may show that the condition existed long enough so that a store owner using reasonable care would have discovered it." *(Emphasis added.)*

An unsafe condition existed on Your Insured's property, of which Your Insured knew or should have known, had Your Insured used reasonable care. <u>Judicial Council of California Civil Jury Instructions</u>, CACI 1003 Unsafe Conditions, states:

"Walmart was negligent in the use or maintenance of the property if:

1. A condition on the property created an unreasonable risk of harm;
2. Walmart knew or, through the exercise of reasonable care, should have known about it; and
3. Walmart failed to repair the condition, protect against harm from the condition, or give adequate warning of the condition."

Moreover, lack of notice is not a defense to liability in California. California courts have ruled that "although liability might easily be found where the landowner has actual knowledge of the dangerous condition, '[the] landowner's lack of knowledge of the dangerous condition is not a defense. He has an affirmative duty to exercise ordinary care to keep the premises in a reasonably safe condition, and therefore must inspect them or take other proper means to ascertain their condition. And if, by the exercise of reasonable care, he would have discovered the dangerous

condition, he is liable.' " (Swanberg v. O'Mectin (1984) 157 Cal.App.3d 325, 330 [203 Cal.Rptr. 701], internal citation omitted.)"

Furthermore, and more importantly, California recently joined other states in relieving the plaintiff's burden of proving actual or constructive notice. In Ortega v. K-Mart Corporation, (2000) 83 Cal.App.4th 175, the court held that "the plaintiff can be relieved of his burden of showing how long a substance was on the floor if he can demonstrate that the site has not been inspected within a reasonable time."

Lastly, California courts have held that each accident must be viewed in light of its own unique circumstances. (Louie, supra, 81 Cal.App.2d at p. 608, 184 P.2d 708.) Accordingly, the owner must inspect the premises or take other proper action to ascertain its condition, and if, by the exercise of reasonable care, the owner would have discovered the condition, he is liable for failing to correct it. (Id. at p. 606, 184 P.2d 708.)" Id., at pps. 1207-1208.

Since your insured knew, or in the reasonable exercise of ordinary care, should have known that a dangerous condition was created by the foreign substance, and it was placed in a common area over which Your Insured exercised control, Your Insured is the sole and proximate cause of the significant injuries suffered by our client.

## FACTUAL APPLICATION

Applying the above rules to the present case, it is clear that being that Your Insured is a place of business open to the public, and thus, Your Insured had a greater ***legal duty*** to ensure the safety of its patrons and not expose them to unreasonable risks of harm. As the facility owner, Your Insured was in the best position to have discovered any dangerous conditions throughout the premises.

Your insured ***breached these duties*** by acting unreasonably, carelessly, recklessly, and negligently under the circumstances by not keeping its facility clear of dangerous conditions.

Leaving a slippery liquid substance on the floor for an extended period of time was the ***proximate cause and the cause-in-fact*** of our client's injuries since there were no intervening causes, and said harm was a foreseeable result of Your Insured's breach.

Our client was obeying all laws at the time of the incident and acting reasonably under the circumstances, thus ***alleviating any comparative negligence*** issues. Based on the foregoing, it is abundantly clear that liability ***solely*** rests with Your Insured.

Our client did not expect nor had any reason to expect a liquid substance on the floor, and poorly maintained. Had Your Insured properly inspected the premises, it would have discovered the liquid substance on the floor and prevented our client from having to endure this traumatizing accident.

Liability is clear. Your insured's negligence is the sole and proximate cause of the injuries our client sustained. For a detailed description of his injuries, please review the attached reports.

### INJURIES AND MEDICAL TREATMENT

As a result of the accident, our client sustained serious injuries to, including but not limited to, injuries to the **neck, back, left foot, and bilateral hips.**

To facilitate your review of this settlement demand, **the following documents have been enclosed on the enclosed compact disc**, evidencing amounts as set forth below in medical expenses incurred by our client as a direct consequence of Your Insured's negligence, as follows:

| Exhibit | Description | Amount |
|---|---|---|
| Exhibit 1: | Apex Medical | $250.00 |
| Exhibit 2: | Merced MRI | Medi-Cal |
| Exhibit 3: | Dr. Vanek | Medi-Cal |
| Exhibit 4: | Sports and Rehab | Medi-Cal |
| Exhibit 5: | Mercy Medical Pavillion | Medi-Cal |
| Exhibit 6: | Radadvantage | Medi-Cal |
| Exhibit 7: | Yosemite Pathology | Medi-Cal |
| Exhibit 8: | Bear Creek Anesthesia | Medi-Cal |
| Exhibit 9: | Medi-Cal Lien | $5,789.99 |
| Exhibit 10: | Conformed Copy of Summons and Complaint | |

**TOTAL PRESENT MEDICAL EXPENSES**     **$6,039.99**

On 04/27/220, Mr. Sanchez went to Apex Medical to be treated and evaluated for injuries he sustained on 04/14/2020 when he was shopping at Walmart and stepped in a liquid substance, causing him to slip and fall. His chief complaints were pain to his neck, back, left knee, bilateral hips, and left foot. X-rays of his left foot, left hip, left knee, and chest were ordered. The following objective findings for his left foot were reported:

1. A small plantar calcaneal spur

Mr. Sanchez was given a referral for physical therapy and pain medication and instructed to seek further medical treatment if the pain and discomfort persist.

On 05/26/2020, Mr. Sanchez went to Sport and Rehab to be treated and evaluated. From 05/26/2020 thru 08/11/2020, Mr. Sanchez received various modalities of physical therapy. The following diagnosis was reported:

1. Plantar fascial fibromatosis (M72.2)
2. Pain in unspecified hip (25.559)

On 08/11/2020, Mr. Sanchez was discharged from treatment but his prognosis remains guarded. Due to the likelihood of future flare-ups or reaggravation, future treatment should be afforded to Mr. Sanchez.

On 06/18/2020, Mr. Sanchez went to Dr. Vanek to be treated and evaluated. His chief complaints were severe bilateral hip pain since the slip and fall on 04/14/2020. The bilateral hip pain has become progressively worse with weightbearing. The pain was described as radiating, stabbing, popping, swelling, and pressure rated 7-9/10. The following diagnosis was reported:

1. Trochanteric bursitis, right hip (M70.61)
2. Trochanteric bursitis, left hip (M70.62)

Mr. Sanchez was given prescription medication for the pain and inflammation and instructed to follow up if the pain and discomfort persists.

On 07/23/2020, Mr. Sanchez went to El Portal Imaging to be evaluated and the following objective findings for the left hip were reported:

1. Grade II chondromalacia in both hips with mild to moderate hip effusions
2. Osteoarthritis, left hip (M16.12)
3. **Labral tear**

On 08/20/2020, Mr. Sanchez went to Mercy Medical Pavillion to be treated and evaluated for the increasing levels of pain to his left hip since the traumatic slip and fall on 04/14/2020. Based on the levels of pain and discomfort as well as the objective findings of the MRI, **hip arthroscopy** was scheduled. The following diagnosis was reported by Dr. Vanek:

1. Hip Osteoarthritis, left (M16.12, M25.652, M25.552, S76.012A)

On 08/26/2020, the following preoperative diagnosis was reported by Dr. Vanek:

1. **Left hip labral tear, hip chondromalacia**

The following procedure was performed by Dr. Vanek:

1. **Left hip arthroscopically assisted labral repair, arthroscopically assisted chondroplasty for chondromalacia grade III and IV**

Dr. Vanek stated during surgery "**Upon entering the joint, it was noted that the patient has an inferior labral tear, which caused severe chondromalacia grade III and IV. Exquisitely, the patient had a large articulating labral tear**".

Mr. Sanchez tolerated the procedure well.

On 02/26/2021, Mr. Sanchez returned to Mercy Medical Center due to the increasing levels of pain and discomfort in his right hip. Based on the objective findings in the MRI, the level of pain and discomfort in Mr. Sanchez's right hip, and the benefit Mr. Sanchez received from left hip arthroscopy on 08/26/2020, the following recommendation was reported by Dr. Vanek:

1. **Right hip arthroscopy**

Mr. Sanchez opted not to proceed with surgical intervention.

**FUTURE SPECIAL DAMAGES**

The causation of Mr. Sanchez's injuries is primarily due to your insured's negligence. The types of injuries he suffered are subject to episodes of remission and exacerbations caused by various aggravations from activities of daily living. The results of comparative tests and examinations reveal that Mr. Sanchez's injuries will predispose him to further problems from aggravation or future trauma which would not have otherwise troubled him prior to the accident. Currently, Mr. Sanchez still has significant residual pain to his neck, back, and bilateral hips that troubles him every single day. He will need continued rehabilitation treatment to his neck, back, and bilateral hips for the foreseeable future.

In addition, Dr. Vanek recommended right hip arthroscopy with an estimated cost of **$30,000.00**

**TOTAL FUTURE SPECIAL DAMAGES**                          **$30,000.00**

**GENERAL DAMAGES**

Mr. Sanchez continues to exhibit residual symptoms which include, but are not limited to his lower back and bilateral hips. Mr. Sanchez's examining physicians have not ruled out the possibility of permanent and irreparable pain.

To this day, Mr. Sanchez is unable to perform activities which sometimes include the simplest of tasks. This includes, but is not limited to, activities related to the home or family including chores and duties performed around the house, recreational activities such as hobbies and sports and occupational activities. **Suffering a labral tear to his left hip which required left hip arthroscopy and a recommendation for right hip arthroscopy are extremely painful and debilitating injuries that have had a devastating effect on Mr. Samchez's ability to perform his daily activities and chores. This accident has caused substantial pain and suffering making it difficult to walk comfortably which has had a devastating impact on the quality of Mr. Sanchez's life.**

Your insured is liable for negligence. As a result, Mr. Sanchez will be able to recover as part of her settlement, past and future general damages. Moreover, we believe, based on past jury

verdicts in Merced County Superior Court, where a trial of this case will be held, Mr. Sanchez will undoubtedly recover at least **$750,000.00** for his past and future general damages.

### SUMMARY OF DAMAGES

| | |
|---|---|
| **TOTAL SPECIAL DAMAGES** | **$6,039.99** |
| **TOTAL FUTURE SPECIAL DAMAGES** | **$30,000.00** |
| **TOTAL GENERAL DAMAGES** | **$750,000.00** |
| **TOTAL ECONOMIC AND GENERAL DAMAGES** | **$786,039.99** |

### SETTLEMENT DEMAND

Our client has authorized us to make a demand to settle all claims against your insured for the amount of **$786,039.99**. This demand will remain open for a period of fourteen (14) days from the date of this letter.

While this correspondence is subject to California Evidence Code Section 1152, nothing contained herein shall be deemed in any manner to be an admission by, or full explication of any facts or a waiver of our client's rights or remedies which may be or become available as a result of actions or omissions with respect to the subject matter stated herein or otherwise, all of which rights and remedies, at law, equity and/or otherwise, are specifically hereby reserved. Thank you for your courtesy and cooperation in this regard.

Sincerely yours,

JAVAHERI & YAHOUDAI
A Professional Law Corporation

Jason Javaheri, Esq.
JJ/pd
Encl(s): As stated